**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 13-cv-02556-RM-KLM

JOE DEHERRERA, (aka Joe "J.R." Deherrera), JOE GRIEGO,
JENNIFER JOHNSON, SCOTT JOHNSON and TOM LARK,
on behalf of themselves individually and all those similarly situated,

Plaintiffs,

v.

DECKER TRUCK LINE, INC.,
a Louisiana corporation

Defendant.

**ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

This action is brought by plaintiffs Joe (J.R.) Deherrera, Joe Griego, Jennifer Johnson, Scott Johnson and Tom Lark (plaintiffs) against defendant Decker Truck Lines, Inc.,(defendant), on behalf of themselves individually and all those similarly situated. (ECF No.1). Plaintiffs allege that defendant violated the federal Fair Labor Standards Act of 1938, 29 U.S.C. §201, *et seq,* (FLSA); the Colorado Wage Act, C.R.S. §§8-4-101, *et seq;* and Colorado Minimum wage Order Nos. 27-29, 7 C.C.R. § 1103-1. *Id.*

Plaintiffs contend that they are (or were) non-exempt employees of defendant who have not been paid "at time-and-a-half their straight time wages for all work performed over 40 hours per work week;" have not been paid "for the 15 minutes of daily off-the-clock work" required by defendant and have not been provided the requisite "10 minutes of duty-free time during each four hours of their work." (ECF No.1, pp.4, 8).

Defendant moves for summary judgment pursuant to Fed.R.Civ.P. 56, arguing that plaintiffs are (or were) employed by defendant to drive commercial motor vehicles in interstate commerce. (ECF No.49, p.2). Defendant contends plaintiffs are thus "within the scope of the FLSA's motor carrier exemption" and therefore "not entitled to any premium wage payments for any overtime work"; are not entitled to gap-time. *Id.* Finally, defendant asserts it "is not covered by Colorado's Minimum Wage Order" promulgated under the authority of the Colorado Wage Act, C.R.S. §§8-4-101, *et seq. Id.*

## II     FACTUAL BACKGROUND

### A.   Undisputed Facts

The following undisputed facts are gleaned from the court's review of the record.

Defendant is a for-hire motor carrier regulated by the U.S. Department of Transportation (USDOT), with its principal office in Fort Dodge, Iowa. (ECF No.60-1, p.2). At all times relevant to this action, plaintiffs are commercial truck drivers with commercial driver's licenses. (ECF No.49, p.5).

Defendant has a transportation contract with the New Belgium Brewing Co., (New Belgium). (ECF No. 60-1, pp.2-3). New Belgium is located in Fort Collins, Colorado. *Id.* As

part of that contract, defendant employs (or did employ), plaintiffs as commercial truck drivers to shuttle the beer produced by New Belgium approximately five miles via public roads, from the New Belgium brewery to a refrigerated warehouse located near the Horsetooth Reservoir (commonly known as the Rez). (ECF No. 60-1, pp.2, 17).

Plaintiffs also shuttle brewery items such as empty kegs, pallets, hops and packaging materials brought to the Rez from *inter alia,* various out-of-state locations, back to the brewery. (ECF No.60-1, pp.4, 22-23). Under defendant's contract with New Belgium (and USDOT regulations), plaintiffs are required to conduct pre-trip safety inspections, which involve inspecting the outside of the vehicle and checking other items listed on a pre-trip inspection checklist. *Id.*

About 99% of New Belgium's product is shipped to the Rez for storage. (ECF No. 60-1, p.8). This means that each day approximately 50,000 cases of beer are shuttled from the brewery to the Rez to await shipping to various interstate and intrastate locations. (ECF No.60-1, p.5). In addition to those cases, kegs of beer are also shipped from the Rez to various interstate and intrastate locations. *Id.* Kegs comprise approximately 40% of New Belgium's total sales. *Id.*

The Rez's management system tracks and documents all brewery products coming in and going out of the Rez via "license plates" on pallets. (ECF No.60-1, pp.5-7). The license plates have an individualized bar code that identifies the product on the pallet and allows the warehouse management to determine where the product should be and is, located. *Id.* Approximately every two weeks, the total storage capacity of the Rez is turned over, i.e., shipped out and replenished. *Id.* In some instances the delivered beer is off-loaded from the shuttle truck, scanned into the

3

Rez inventory and immediately loaded onto an outbound truck for delivery to interstate or intrastate destinations. *Id.*

New Belgium's customers are primarily distributors who arrange to ship their purchased beer from the Rez. (ECF No. 60-1, pp.6-7, 22). The beer shipped for storage at the Rez has not been assigned to a particular customer. (ECF No.60-1, p.21). New Belgium forecasts customer demand by first calculating the maximum amount of beer it could produce in the coming year, predicting the amount and types of beer that will be sold in various sales territories and then confirming whether and how it can arrange production to meet those forecasted sales. (ECF No. 60-1, pp.8-9). New Belgium then creates monthly schedules showing the beer that will be brewed and packaged each day of that month. (ECF No.60-1, p.9).

In November 2013, approximately 86% of the product shuttled to the Rez was shipped to interstate locations. *Id.* Currently 89% of New Belgium's product is shipped interstate. *Id.* A limited amount of product repackaging occurs at the Rez. (ECF No.60-1, p.10).

**B.    Disputed Facts**

The parties hotly dispute precisely what plaintiffs Griego and Johnson and their current counsel admitted in their National Labor Relations Board (NLRB) adjudication against defendant.

Defendant asserts that plaintiffs admitted they were subject to USDOT Federal Motor Carrier Safety Regulations (FMCSR) and are therefore estopped from now arguing that they are not exempt employees subject to DOT regulation. (ECF No.49, pp.13-17).

Plaintiffs contend that the subject of the NLRB hearing was whether defendant had unlawfully terminated plaintiffs Griego and Johnson, not whether the DOT had jurisdiction or plaintiffs were engaged in interstate commerce.

The disputed admissions are not necessary to resolution of the motion currently before the court and will therefore not be further addressed in this order.

### III LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal co., Inc.*, 41 F.3d 567, 569 (10th Cir.1994). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). The court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *Quaker State Mini-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir.1995). However the nonmoving party must identify sufficient evidence which would require submission of the case to a jury. *Anderson,* 477 U.S. at 249-52.

The analysis on a motion for summary judgment differs depending on whether the moving party is also the party with the burden of proof at trial. *Celotex*, 477 U.S. at 323. Where, as here, the moving party does not have the burden of production at trial, the movant must demonstrate the absence of sufficient evidence in the record to establish one or more elements of each challenged claim or defense. *Celotex*, 477 U.S. at 322-23. The burden then shifts to the respondent to come forward with sufficient competent evidence to demonstrate a genuine dispute

of material fact with regard to each challenged element. *Id.* If the respondent fails to produce sufficient competent evidence that, if accepted by the factfinder, would establish its claim or defense, the claim or defense must be dismissed as a matter of law. *Id.*

## IV    DISCUSSION

Plaintiffs assert both a FLSA overtime claim and a state law overtime claim.

**A.    FLSA Claim:**

Pursuant to the FLSA, an employer must pay an employee overtime wages when the employee works more than forty hours in a week. 29 U.S.C. §207(a)(1). However, the FLSA contains the Motor Carrier Act (MCA) exemption. 29 U.S.C. § 213(b)(1)("any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49" is exempt from this requirement). An employee of a private motor carrier is subject to the power of the Secretary of Transportation and therefore exempt from the FLSA if the employee in the performance of his/her duties, moves goods in interstate commerce and affects the safe operation of motor vehicles on public highways. 49 U.S.C. §§3102, 10521; *United States v. Amer. Trucking Assoc'ns*, 310 U.S. 534, 553 (1940).

To qualify for the exemption the employer must show: (1) that it is a carrier whose transportation of passengers or property by motor vehicle is subject to the Secretary of Transportation's jurisdiction because its transportation takes place in interstate commerce; (2) the employee is a driver; and (3) the employee engages in activity that affects the safety of operation of motor vehicles in the transportation of passengers or property in interstate

commerce. 29 U.S.C. §§782.2(a)-(b)(2); *Foxworthy v. Hiland Dairy Co.,* 997 F.2d 670, 672 (10th Cir. 1993).

Plaintiffs argue that they are nonexempt employees because all the work they do for defendant takes place in five miles back and forth between the brewery and the Rez and, the beer transported is not " . . . a specific order for a specific quantity of beer going to a specific destination until after the beer is at the Rez." (ECF Nos. 1 and 54, p.12). Defendant responds that plaintiffs are exempt employees within the meaning because: (1) plaintiffs are commercially licensed drivers responsible for the safe operation of the trucks on the public roads; (2) the New Belgium product that plaintiffs move to the Rez is for the most part, intended for interstate shipment even though the brewery does not know the ultimate destination of the beer when it ships it for refrigeration at the Rez and (3) the empty kegs, pallets, packing and hops which plaintiffs move from the Rez to New Belgium's brewery arrived at the Rez largely via interstate transportation. (ECF No. 60).

As stated above, there is no dispute among the parties that defendant is a motor carrier employing commercially licensed truck drivers to drive motor vehicles over public highways and is subject to the Secretary of Transportation Federal Motor Carrier Safety Regulations (FMCSR). Nor is there any dispute among the parties that plaintiffs transport beer on a public road, from the brewery to the refrigerated storage at the Rez and along the same road, return brewery goods such as empty kegs, pallets, cardboard packing materials and hops, to the brewery from the Rez; or that while doing so they are required to conduct safety inspections on their vehicles before they drive on the public road between the Rez and brewery.

Leaving aside the analysis of whether the shipment of beer from the brewery to the Rez is intended for interstate shipment for the purpose of determining this motion, there is no dispute among the parties that plaintiffs regularly (albeit periodically), transport materials returned from *inter alia,* New Belgium's interstate customers, back to the brewery from the Rez along a public road. Plaintiffs argue that this is not participation in interstate commerce because: 1) the risk of loss of these materials has shifted back to New Belgium; (2) the back haulage is infrequent and (3) the interstate shipment of these materials stops at the Rez. (ECF No. 54, pp. 7-8, 14). However, plaintiffs lack support for their assertion that the interstate nature of those materials was removed or changed when the materials were delivered to the Rez. It is clear from the practical realities of the business at hand and the character of the materials – kegs to be refilled, pallets to be reloaded and hops to be used to make the beer - that the out-of-state shippers intended the various materials to be returned to the brewery.

In summary, it is undisputed that interstate and intrastate kegs and other materials were returned by both in-state and out-of-state customers to New Belgium. Similarly it is undisputed that plaintiffs transported these returned materials from the Rez to the brewery along a public road. How often they transported interstate materials is immaterial. *Morris v, McComb*, 332 U.S. 422, 434 - 437 (1947)(employees exempt from overtime provisions of the FLSA even though only three to four percent of their time was devoted to services in interstate commerce). This activity is therefore clearly sufficient to place plaintiffs in interstate commerce and under the authority of the Secretary of Transportation which in turn, exempts plaintiffs from the overtime provisions of the FLSA. *Walling v. Jacksonville Paper Co.,* 317 U.S. 564, 569 (1943)(interstate journey of goods not ended by reason of a temporary holding of the goods at the warehouse); see also *Foxworthy*, 997 F.2d at 672.

B.    **Colorado Wage and Hour Overtime Claim**

Plaintiffs allege that defendant has violated the Colorado Wage and Hour law by failing to pay them at time and a half for work over 40 hours per week, failing to pay them for "for the 15 minutes of daily off-the-clock work" required by defendant and have not been provided the requisite "10 minutes of duty-free time during each four hours of their work." (ECF No.1, pp.9-10). Plaintiffs contend that they are covered by the Wage Order because they are "equipment operators" working in a commercial support service. (ECF No. 54, pp. 19-20).

Defendant responds that Colorado's Minimum Wage Order does not apply to defendant because: (1) defendant is not a retail and service entity, commercial support service, food and beverage seller or health and medical supplier as envisioned by the Wage Order and (2) plaintiffs are not equipment operators as envisioned by the Wage Order. (ECF No. 49, p.17; No.60, p.13).

The interpretation and application of the Colorado Minimum Wage Order is a matter of Colorado law. *Salazar v. Butterball, LLC,* 644 F.3d 1130, 1143-44 (10th Cir. 2011). Colorado wage and hour law mandates a minimum wage and overtime compensation for hours worked in excess of forty, for employees working in retail and service, food and beverage, commercial support service and health and medical industries. 7 Colo. Code Regs. § 1103-1.1; *Salazar v. Butterball*, 644F.3d 1130, 1143(10th Cir. 2011). Commercial support service is defined as:

> "any business or enterprise engaged directly or indirectly in providing services to other commercial firms through the use of service employees who perform duties such as: clerical, keypunching, janitorial, laundry or dry cleaning, security, building or plant maintenance, parking attendants, equipment operations, landscaping and grounds maintenance."

7 Colo Code Regs. §1103-1:2(B)

Plaintiffs argue that they qualify under this provision as equipment operators in commercial support services because they "operate trucks, which are equipment, for [defendant], a business that provides services to New Belgium, a commercial firm." (ECF No. 54, p.20). Defendants respond that the term "equipment operations as used in the Minimum Wage Order is ambiguous and not clearly defined" and a reasonable interpretation of equipment operations would exclude motor vehicle operators (except parking attendants), especially commercial truck drivers transporting interstate goods via public roads. (ECF No.60, p.14).

Statutory construction attempts to effectuate the legislature's intent by looking to the plain meaning of the language used within the context of the statute as a whole. *Salazar,* 644 F.3d at 1143(citation omitted). If the language is ambiguous, Colorado courts may apply a common sense meaning to the term by considering the surrounding words. *Colo. Cross Disability Coalit'n,* 765 F.3d 1205, 1231 (10th Cir. 2014).

Given the specific exemption from the Wage Order for interstate drivers (7 Colo. Code Regs §1103-1:5), and applying a common sense reading to the term "equipment operations" which is listed among duties such as building and plant maintenance, janitorial, clerical, laundry, parking attendants, landscaping and grounds maintenance, I find defendant's arguments persuasive. Common sense dictates that it is impossible to be an interstate driver without operating equipment. Given the specific exemption for interstate drivers in the Colorado Wage Order, I find it unlikely that the legislature desired to include motor carrier drivers transporting interstate goods (such as e.g., New Belgium's keg returns), on public roads under the vague category of equipment operators. I therefore find that plaintiffs are exempt from the Colorado Wage Order.

Viewing the evidence as a whole, I find there is no genuine issue of material fact as to whether plaintiffs' employment was subject to the MCA exemption. The undisputed evidence shows that the US DOT has jurisdiction over defendant and that plaintiffs are or were employed as drivers for motor carriers that at least some of the time, carried materials shipped in interstate commerce over public roads. As interstate drivers, plaintiffs are also specifically exempt under the Colorado Wage Order.

## V. CONCLUSION

Accordingly, for the reasons stated above, defendant's Motion for Summary Judgment (ECF No.49), is GRANTED. The Clerk of the Court is hereby directed to enter JUDGMENT in defendant's favor.

IT IS SO ORDERED

DATED this 10th day of June, 2015.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge